1   Susan Martin (AZ#014226)
2   Daniel Bonnett (AZ#014127)
    Jennifer Kroll (AZ#019859)
3   Michael Licata (AZ#033941)
    Martin & Bonnett, P.L.L.C.
4   4647 N. 32nd Street, Suite 185
5   Phoenix, Arizona 85018
    Telephone: (602) 240-6900; Facsimile: (602) 240-2345
6   smartin@martinbonnett.com
7   dbonnett@martinbonnett.com
    jkroll@martinbonnett.com
8   mlicata@martinbonnett.com
    *Attorneys for Plaintiffs*
9

10              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF ARIZONA
11

12   David Collinge, Melonie Priestly, Heather      )   No.  CV-12-00824-JWS
     Arras, Robert Campagna, John Morena, Brian     )
13   Black, and Brian Kingman on behalf of          )
     themselves and all others similarly situated,  )   PLAINTIFFS' UNOPPOSED
14                                                   )   MOTION FOR PRELIMINARY
                                                     )   APPROVAL OF CLASS ACTION
15                    Plaintiffs,                    )   SETTLEMENT AGREEMENT
     vs.                                             )   AND FOR ORDER DIRECTING
16                                                   )   NOTICE TO CLASS MEMBERS
     IntelliQuick Delivery, Inc., an Arizona        )
17   corporation; Keith Spizzirri and Miriam        )
     Spizzirri, husband and wife; Transportation    )
18   Authority, LLC, a Nevada corporation; Robert   )
     F. Lorgeree, Jr; Majik Leasing, LLC, an Arizona)
19                                                   )
20   corporation, Felica Tavison; Jason Mittendorf  )
     and Jane Doe Mittendorf; Jeffrey Lieber;       )
21   William "Bill" Cocchia and Jane Doe Cocchia;   )
     Steven Anastase and Jane Doe Anastase; Majik   )
22   Enterprises I, Inc., an Arizona corporation,   )
23                                                   )
                                                     )
24                    Defendants.                    )
                                                     )
25
26
27
28

**INTRODUCTION**

Pursuant to Fed. R. Civ. P. 23 Plaintiffs hereby move for preliminary approval of the Settlement Agreement[1] and for an order approving the form and method of notice to be sent to the Class Members. The Agreement is the product of arms-length negotiations between the parties and provides for a Gross Settlement Amount of $5.5 million for the resolution of all claims against Defendants asserted in the Second Amended Complaint, including the collective action claims under the Fair Labor Standards Act ("FLSA"), the Rule 23 class claims under Arizona wage statutes, as well as the individual claims alleged by the Named Plaintiffs. The payments allocated to the Class are substantial.  As calculated by Plaintiffs' the Settlement provides approximately 82% of Class Members' estimated damages on a gross basis and approximately 48.6% on a net basis (after accounting for requested attorneys' fees, costs and Service Awards.) As demonstrated below, the Settlement Agreement is fair, reasonable, and an excellent result for Class Members. By way of summary, the key provisions of the Settlement Agreement provide as follows:

- The payment by Defendants of a Gross Settlement Amount of $5.5 million over the next several years for (i) payment to Settlement Class Members for their FLSA and wage claims as set forth in the Plan of Allocation; (ii) payment to Named Plaintiffs for resolution of their non-class retaliation and Family and Medical Leave Act ("FLMA") claims against Defendants; (iii) Service Awards to the Named Plaintiffs; (iv) costs of administration; and (v) attorneys' fees and costs;

- Agreement by Defendants to pay at least $2.5 million as an initial payment with the balance paid annually in increments of not less than $500,000 over not more than four years;

---

[1] The Settlement Agreement, also referred to herein as the "Agreement," is attached as **Exhibit 1**. Capitalized terms are as set forth in the Agreement.

- Agreement that $3 million of the settlement is on a claims-made basis while assuring that all Settlement Class Members who opted-in the FLSA action are deemed to have submitted claims and that no further action is required for them to receive a monetary payment;

- The right of Class Members to exclude themselves from the settlement or file objections;

- Releases of all claims that were asserted or could have been asserted by Settlement Class Members in the lawsuit; and

- Defendants' provision of liens, a confession of judgment for a substantially greater amount, and other forms of security to ensure compliance with the Agreement in exchange for the extended payment schedule.

## I.   CASE HISTORY AND SETTLEMENT NEGOTIATIONS

This case was filed on April 19, 2012 and has been vigorously litigated for nearly seven years. On April 19, 2012, Plaintiffs David Collinge, Melonie Priestly, and Heather Arras filed a collective and class action Complaint (Doc. 1) against Defendants IntelliQuick Delivery, Inc., its owner Keith Spizzirri, three related entities, and several of IntelliQuick's officers and managers. Plaintiffs filed an Amended Complaint (Doc. 92) on December 12, 2012 and a Second Amended Complaint (Doc. 187) on December 9, 2013, which added Robert Campagna, John Morena, Brian Black, and Brian Kingman as additional Named Plaintiffs and class representatives. Plaintiffs' Second Amended Complaint alleged collective and class claims, including, *inter alia*, that Defendants misclassified its delivery drivers (hereinafter "Drivers" or "Class Members") as independent contractors and failed to pay legally-required minimum wages and overtime wages in violation of the FLSA and Arizona wage statutes, A.R.S. § 23-350 et seq. Plaintiffs also alleged that Defendants' "Independent Contractor Owner/Operator Agreement" ("ICO/OA") was substantively and procedurally unconscionable and that Defendants' deductions from payments to its drivers were unlawful. The Named Plaintiffs also alleged individual claims, including, *inter alia*, that Defendants retaliated against

Plaintiffs Campagna and Collinge in violation of the FLSA and that Defendants interfered with certain Named Plaintiffs' protected rights under the FMLA, 29 U.S.C. §2601 et. seq. Defendants answered the Complaint on June 7, 2012 (Doc. 44), the First Amended Complaint on December 31, 2012 (Doc. 97) and the Second Amended Complaint on December 26, 2013 (Doc. 209).

By order dated July 31, 2012 (Doc 59), the Court conditionally certified the following class as an FLSA opt-in class pursuant to 29 U.S.C. §216(b) and directed that notice be sent to potential Class Members:

> All current and former drivers or couriers, who made pick-ups or deliveries for or on behalf of IntelliQuick Deliveries, Inc. as a Freight Driver, Route Driver, or On-Demand Driver within the State of Arizona and who were or are classified or paid as independent contractors or not classified or paid as employees at any time on or after April 9, 2009.

Ninety-Six (96) eligible individuals opted into the FLSA collective action. ¶ 13 of the January 29, 2018 Declaration of Daniel Bonnett (filed herewith) (the "Bonnett Decl.").

On March 23, 2015 (Doc. 342), the Court certified the same class under Fed. R. Civ. P. 23(b)(3) with respect to Plaintiffs' claims for minimum wage and overtime violations under A.R.S. § 23-351 and Plaintiffs' claims that Defendants' standardized payroll deductions violate A.R.S. § 23-352.[2] The Court also certified subclasses with respect to On-Demand, Route, and Freight Drivers, as well as a subclass under R. Civ. P. 23(b)(2) with respect to Plaintiffs' claim that the contract signed by the Drivers was substantively unconscionable. In the same Order (Doc. 342), the Court denied Defendants' motion to decertify the FLSA opt-in class. By agreement of the Parties and with approval of the Court, this matter was bifurcated into two phases. Phase I was limited to the issue of whether the Drivers were employees or independent contractors and issues related to class and collective certification. Doc. 110 at 14-15. Phase II was to address all remaining issues including damages. In a separate Order dated March 23, 2015 (Doc. 343), the Court

---

[2] Contemporaneous with this Motion, the Parties are filing a joint motion to modify the Class for settlement purposes by providing a date for closure of the class period.

granted, in part, Plaintiffs' motion for summary judgment on the issue of misclassification, holding that Plaintiffs and the Drivers are and were employees for purposes of the FLSA and the Arizona Wage Act. Thereafter, the parties, through counsel, explored the prospects of settlement. Bonnett Decl. at ¶ 19.

Following extensive Phase II discovery proceedings and expert witness disclosures, Plaintiffs filed a second motion for summary judgment seeking, *inter alia*, summary judgment on issues of FLSA and Arizona Wage Act violations, the calculation of damages, and the claims for substantive unconscionability. Doc. 438. Plaintiffs also sought summary judgment on Defendants' Motor Carrier Act exemption affirmative defense relating to the class claims for overtime. Doc. 438. Defendants filed a motion for summary judgment seeking a determination that individually-named Defendants were not liable for alleged FLSA and Arizona Wage Act violations. Doc. 428. By Order dated January 9, 2018, the Court, *inter alia*, denied Plaintiffs' motion for summary judgment on damages and the Motor Carrier Act exemption, holding those issues presented factual issues for the jury. The Court also found that six provisions of the ICO/OAs were substantively unconscionable and that the appropriate remedy for Plaintiffs' unconscionability and unlawful deduction claims would be to "enforce IntelliQuick's contractual right to take deductions from drivers' paychecks unless the particular deduction would violate the driver's right to minimum wage or overtime pay." Doc. 478-1 at 55. The Court further held that IntelliQuick's FLSA violations were willful within the meaning of 29 U.S.C. § 255 and that Keith Spizzirri is individually liable for IntelliQuick's FLSA violations and any resulting damages. Doc. 478-1 at 56.

Following the January 9, 2018 summary judgment ruling, the Parties engaged in supplemental damages discovery and additional expert disclosures. A two-week jury trial was scheduled to begin on January 14, 2019. Doc. 521.

While working to meet pre-trial deadlines, the Parties engaged in extensive arms-length negotiations involving the production of documents and information concerning Defendants' financial condition and engaged in mediation efforts with Hunter Hughes III,

a highly-experienced mediator in class and collective action litigation. The mediation efforts continued for several months and included complex, difficult negotiations directly and indirectly with the involvement and assistance of Mr. Hughes. During the first full-day of mediation (an in-person meeting held on May 9, 2018) no agreement was reached. There were numerous follow-up communications and meetings (both by phone and in person) over the following months to explore resolution.

On September 26, 2018, the Parties again met in person and Defendants' brought their outside bankruptcy counsel and a debt restructuring finance professional to the meeting. In that meeting, Defendants stated to Class Counsel that if the case could not be resolved Defendants would file for bankruptcy protection within the next several weeks. Named Plaintiffs retained their own bankruptcy and judgment collection consultants and the parties continued to engage in extensive settlement discussions throughout November 2018. These efforts culminated in a memorandum of understanding signed by the Parties and their counsel on December 4, 2018. The parties notified the Court the following day that agreement on essential terms of settlement had been reached and agreed to submit documents for preliminary approval. Bonnett Decl. ¶¶ 26-27, 34.

As set forth in detail in the Bonnett Declaration, Class Counsel has conducted an extensive investigation into the facts concerning the lawsuit as well as the Named Plaintiffs' and Class Members' individual claims, including through extensive formal discovery, informal disclosures between the Parties, and other investigations undertaken by Class Counsel, including investigation of Defendants' present and projected future financial condition and possible outcomes and proceedings if Defendants were to file for bankruptcy protection. *Id*. at ¶ 36. Class Counsel has also undertaken a thorough assessment of the value of the asserted claims, including through the retention of an expert economist with experience in the transportation and delivery industry, David Breshears, who produced several detailed reports for Plaintiffs involving analysis of records used to determine hours worked by Plaintiffs and members of the Class. *Id*. ¶ 29. After careful analysis of the risks inherent in continued litigation, including with respect to Defendants'

financial position and the likelihood of potential outcomes of each claim at trial, Class Counsel developed an allocation formula based on their thorough understanding of the litigation and the risks and costs of delay of trial, potential bankruptcy proceedings, and subsequent appeals. Class Counsel also analyzed the impact of the settlement on Named Plaintiffs and all Class Members. Based on careful consideration of the relevant factors, Class Counsel submits that the terms and conditions of the Agreement are fair, reasonable, and constitute an excellent result for Class Members. *Id*. at ¶ 36. Plaintiffs, therefore, request that the Court grant preliminary approval of the Settlement Agreement.

## II.   SUMMARY OF THE SETTLEMENT AGREEMENT

The Settlement provides an excellent resolution of the nearly seven-year litigation by providing substantial monetary relief to the Settlement Class consisting of a total of 1268 Drivers who were misclassified by Defendants as independent contractors. The gross recovery for the Settlement Class prior to a fee award and Service Awards (but excluding Named Plaintiffs Individual claims) is approximately 82% of their losses as calculated by Named Plaintiffs' expert. If the Court grants Class Counsel's fee and costs application and requests for administrative costs and Service Awards, the net recovery to all Settlement Class Members will be approximately 48.6% of their losses as calculated by Named Plaintiffs' expert. The following is a summary of the Settlement Agreement's central terms. Plaintiffs also include a summary of the Agreement in the Bonnett Decl. at ¶¶ 29-70.

### A.   The Settlement Amount

The Settlement Agreement includes a Gross Settlement Amount of $5.5 million. The Agreement provides that the total for Named Plaintiffs' Individual Claims, Service Awards, Costs and Attorneys' Fees shall not exceed $2.5 million and that $2.5 million of the Gross Settlement Amount is not subject to reversion. While the Agreement provides that the balance of $3 million is payable on a claims-made basis subject to reversion, all Settlement Class Members who have already opted-in (the "FLSA Class Members") are deemed to have submitted claim forms and need not do anything further to receive a

monetary award. In the event a Rule 23 Class Member, who is not also a FLSA Class Member, does not submit a claim form to participate in the Settlement, the amount allocated for that Individual Settlement Payment will revert to Defendants.

Following an allocation from the Gross Settlement Amount for attorneys' fees and costs, administrative costs, Service Awards and Individual Damages Claim Payments as approved by the Court, the Net Settlement Fund will be allocated amongst all the Settlement Class Members proportionately based on the Plaintiffs' expert's calculation of Gross Settlement Damages.

Defendants must transfer to the Settlement Administrator an Initial Payment of $2.5 million within 30 days of Final Approval from which costs and Service Awards are to be paid in full. After payment of costs and Service Awards, the balance of the Initial Payment will be divided and distributed proportionally by the Settlement Administrator to the Settlement Class Members, Named Plaintiffs for their Individual Damages Claim Payments, and to Class Counsel for attorneys' fees. The Agreement provides that not later than one year after the Initial Payment is due and for successive years not to exceed four, the Remaining Settlement Amount must be paid by Defendants in equal installments, not to exceed four annual installments, with each annual installment to be not less than $500,000 unless the total Remaining Settlement Amount balance owed is less than $500,000, in which case it must be paid in full.[3] Each installment payment is due no later than the date that is 12 months after the Initial Payment or preceding payment is due until the Remaining Settlement Amount is paid in full.

**B.    Calculation of Individual Settlement Amounts**

Following allocation of the Named Plaintiffs' and each Class Member's proportionate share of attorneys' fees and costs, administrative costs and Service Awards, and after allocating for Individual Damages Claim Payments, the resulting Net Settlement Fund will be used to pay each Settlement Class Members' Individual Settlement Amounts.

---

[3] By way of example, if the net amount due after the Initial Payment is $2.2 million, then Defendants will pay $550,000 each year for four years.

Class Members' Individual Settlement Amounts will be determined according to an allocation formula based on Plaintiffs' expert's calculation of damages as set forth in his expert report dated September 6, 2018, as amended to correct any errors or omissions. The allocation formula takes into account the claims asserted by the FLSA Opt-In Class and the Rule 23 Class, the estimated number of hours worked by each Class Member in a workweek, the net amount paid to each Class Member, and the relative strengths of the claims asserted on behalf of Class Members, including the likelihood of prevailing on the merits. The Net Settlement Fund will be allocated based on the percentage each Class Member's Gross Settlement Damages bears to the total of all Class Members' Gross Settlement Damages multiplied by the Net Settlement Fund. In no event shall the total allocations to all Settlement Class Members exceed the Net Settlement Fund.

Each Class Member's Gross Settlement Damages will be based on whether they are an FLSA Opt-In Class member, a Rule 23 Class Member, or both. Gross Settlement Damages for FLSA Opt-In Class Members will be based on the total unpaid wages due (i.e., overtime premiums due, minimum wages due, and overtime premiums on minimum wage due) times two (to account for liquidated damages available under the FLSA) for the time period beginning three years prior to the filing of the individual's opt-in form through July 7, 2018. Gross Settlement Damages for Rule 23 Class Members will be he total unpaid wages due plus interest on such wages due for the time period from April 9, 2011 through July 7, 2018. For those who are both FLSA and Rule 23 Class Members, Gross Settlement Damages are the greater of the damages as an FLSA Opt-In Class Member or as a Rule 23 Class Member, but not both.

A list of each Class Member's estimated Individual Settlement Payment is attached as Exhibit 1 to the Bonnett Decl. Each Class Member's estimated Individual Settlement Amount (based on the Court granting the requests for attorneys' fees, costs, Service Awards, and Individual Damages Claims Payments) will be included in their individualized Class Notice. Class Counsel may correct the Individual Settlement Amounts as new and corrected data is discovered and will file a final list of Individual

Settlement Amounts prior to the Final Fairness Hearing. The Class Notice will state that the Individual Settlement Amount may be more or less and may be adjusted based on the determinations by the Court or in the event Class Counsel obtains new or corrected information.

## C.     Service Awards

The Settlement Agreement provides that the Named Plaintiffs will apply to the Court for approval of the proposed Service Awards for their extensive time commitment working to help prosecute this Lawsuit on behalf their fellow employees, and for the risks undertaken in challenging the Defendants. Named Plaintiffs' work will be documented in declarations submitted 21 days prior to the end of the Notice Period. The total requested Service Awards for the seven Named Plaintiffs is $67,500. The proposed awards range from $2,500 to a high of $20,000 for two individuals and are based on each Named Plaintiff's relative contributions to the case. The amounts to be awarded as Service Awards are to be paid from the Initial Payment and are in addition to the other settlement amounts allocated to the Named Plaintiffs under the Agreement. As with the request for attorneys' fees, the Agreement is not conditioned on the Court's determination with respect to the proposed Service Awards.

## D.     Named Plaintiffs' Individual Damages Claim Payments

In agreeing to settle, Defendants required a global resolution of all Named Plaintiffs' outstanding claims whether asserted in the case or otherwise.  Accordingly, the Named Plaintiffs' individual claims are finally resolved and released under the Settlement Agreement. The resolution of the individual claims resulted in agreed Individual Damages Claims totaling a gross amount of $557,000 before application of the proportional reduction applied to Class Members based on the total settlement amount (i.e. yielding a gross amount of approximately 82%) and before allocation of the appropriate share of attorneys' fees, costs, and Service Awards. The agreed Individual Damages Claim Payments resolve claims of retaliation in violation of the FLSA brought by Plaintiffs Campagna and Collinge following Defendants' termination of their employment after

filing this lawsuit, and claims that Defendants interfered with Plaintiffs Kingman, Black, and Arras's protected rights under the FMLA. In addition, the Agreement resolves claims by Named Plaintiffs Kingman and Morena for FLSA retaliation. These two Plaintiffs were terminated and filed charges with the National Labor Relations Board for unfair labor practices which are still pending. Both have agreed to resolve their NLRB and viable federal claims for FLSA retaliation. The basis and process for determinations of each of the Individual Damages Claim Payments are set forth in detail in the Bonnett Decl. ¶¶ 49-63. The agreed allocation represents a fair, reasonable and equitable apportionment of the Gross Settlement Fund to the Named Plaintiffs for their Individual Damages Claims and does not disproportionately favor or discriminate against, between, or among the Settlement Class Members or the Named Plaintiffs. *Id*. at ¶ 51-52.

**E.      Attorneys' Fees, Costs, and Expenses**

The Named Plaintiffs and Class Counsel are requesting costs and expenses in the amount of approximately $400,000 and an award of attorneys' fees of $ 1,833,333.33 (1/3 of the settlement). These amounts are fully disclosed in the proposed Notice. As set forth in detail in the Bonnett Decl, the amount requested is actually *less* than the reasonable value of Class Counsel's services in this matter based on reasonable, customary and previously approved hourly rates commensurate with Class Counsel's experience and expertise. In other words, employing a lodestar cross-check, the amount requested by Class Counsel is less than the value of the reasonable lodestar. Support for the attorneys' fee request is set forth in the Bonnett Decl. ¶¶ 71-84. In accordance with the Agreement, Fed. R. Civ. P. 23(h), Rule 54(d)(2), and LRCiv.54.2, Class Counsel will submit a motion with supporting documentation in further support of final approval of the requested fees within 21 days prior to the end of the Notice Period. The amount to be awarded as attorneys' fees, costs, and expense will be paid from the Gross Settlement Amount. All costs and expenses which are approved by the Court will be paid in full from the Initial Payment. Attorneys' fees approved by the Court will be paid to Class Counsel by the Settlement Administrator in equal proportion to the total amount of the Individual

Settlement Amounts in relation to all of the sums paid in the initial and remaining installment payments.

**F.      Administrative Costs**

Costs to administer the Settlement are estimated to be $35,000. Bonnett Decl. ¶ 45. The Agreement provides that IntelliQuick will pay the administrative costs but will be entitled to offset 100% of its payment of from the annual Remaining Settlement Amount payments, but not from the Initial Payment, on a pro-rata basis based on the number of Remaining Settlement Amount payments.

**G.      Remedies in the Event of Defendants' Failure to Pay the Final Settlement Amount and Security for Such Payments**

The Settlement Agreement includes provisions designed to provide Plaintiffs and Class Members added security in the event Defendants do not comply with their obligations under the Agreement. These include: (1) a Stipulation of Entry of Judgment; (2) Liens; and (3) Warranty and Waiver of Community Property.

As to the Stipulated Entry of Judgment, IntelliQuick and Keith Spizzirri have each agreed to execute and deliver to Class Counsel a separately executed stipulation to entry of judgment in the form attached as Exhibit H to the Settlement Agreement. The stipulations to entry of judgment are in the amount of Eight Million Six Hundred Thousand Dollars ($8,600,000.00) less any payments Defendants make under the terms of the Settlement. The stipulations to entry of judgment will be held in trust by Class Counsel subject to Final Approval by the Court and thereafter subject to compliance with the Agreement by Defendants. If Defendants fail to timely cure a Default, the Parties have agreed that Class Counsel may immediately file the stipulations for entry of judgment in this Court and/or any other court with jurisdiction over Defendants and may take any and all actions to enforce their rights under the Agreement.

As collateral for payment of all sums due under the Settlement Agreement, the Agreement also requires Defendants Intelliquick, Keith Spizzirri, and Miriam Spizzirri to execute Lien Instruments in favor of Named Plaintiffs and the Settlement Class Members

on all real and personal property, subordinated only to current business liens, future business liens associated with new financing, and credit obtained in the ordinary course of business for the normal business operation of IntelliQuick.

The Settlement Agreement also includes warranties stating that Keith and Miriam Spizzirri will not and have not transferred or encumbered any of Keith Spizzirri's sole and separate property or any of the Spizzirri community property since the commencement of this litigation and will not do so as long as any amount remains due and owing by Defendants under the Agreement or judgment that may be entered in the event of Default.

 H. The Proposed Notice

 The proposed form of Class Notice, attached as Exhibit C to the Agreement, describes in plain English the terms of the Settlement with estimated individual recoveries, how those amounts were calculated based on the Plan of Allocation, the considerations that led Class Counsel to conclude that the Settlement is fair and adequate, the percentage and exact amount of attorneys' fees and approximate amount of costs that will be sought, the procedure for submitting a claim, for opting out or objecting to the Settlement, and the date and place of the fairness hearing. The Notice will be distributed in the best means practicable under the circumstances (including by mail, and email or text message when available) and provides a clear, concise, and accurate description of the Agreement and an adequate opportunity for Class Members to evaluate the Settlement in order to decide whether to participate. The Class Notice also encloses a Claim Form and Change of Information Form (Exhibits B to the Agreement). With the Court's approval, the Class Notice will be distributed no later than 14 days after the Court grants preliminary approval.

### III.    ARGUMENT

**A.    The Settlement Agreement is Fair, Reasonable, and Adequate**

"Because '[t]he Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval [,]' … district courts in this Circuit typically apply the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir.

1982).” *Garcia v. Cty. of Los Angeles*, No.153549, 2018 WL 3218212, at *2 (C.D. Cal. May 21, 2018) (quoting *Otey v. CrowdFlower, Inc.*, 2015 WL 6091741, *4 (N.D. Cal. 2015)). *See Villarreal v. Caremark LLC*, No. CV-14-00652-PHX-DJH, 2016 WL 5938705, at *2 (D. Ariz. May 10, 2016) (“Like ‘numerous district courts throughout the Ninth Circuit,’ this Court, too, is guided by *Lynn's Foods* in deciding whether to approve the parties’ Stipulation.”) (citing cases). “In ‘scrutinizing’ a FLSA settlement ‘for fairness [,]’ a court must decide whether a stipulated settlement agreement ‘is a fair and reasonable resolution of a bond fide dispute of FLSA provisions.’” *Villarreal*, 2016 WL 5938705, at *2 (quoting *Lynn's Foods*, 679 F.2d at 1353). “If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues ... that are actually in dispute,” the district court may “approve the settlement in order to promote the policy of encouraging settlement of litigation.” *Lynn's Food Stores*, 679 F.2d at 1354.

Because of the inherent differences between class actions and individual FLSA settlements, some of the Rule 23 “fairness” factors do not apply to FLSA collective action settlements. *Villalobos*, 2016 WL 6901695 at *4. “However, ‘[s]everal courts have regularly applied the Rule 23... factors when evaluating the fairness and reasonableness of an FLSA settlement.’” *Villalobos*, 2016 WL 6901695 at *4, *quoting Lewis*, 2012 WL 2930867, at *2. “These factors include (1) the strength of plaintiffs’ case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the Class Members to the proposed settlement.” *Id.* (citing *Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). As this case involves both FLSA and Rule 23 classes, application of these factors is appropriate. As set forth below, all the relevant factors favor settlement of the case.

1. While Plaintiffs Case is Strong, Plaintiffs Face Litigation Risk

Plaintiffs obtained summary judgment on the issue of whether the Drivers were

misclassified as independent contracts under the FLSA, that IntelliQuick's FLSA violations were willful within the meaning of 29 U.S.C. § 255, and that Defendant Keith Spizzirri is individually liable for IntelliQuick's FLSA violations and resulting damages, if proven (Doc. 478-1 at 56). The Court also found that six provisions of the agreements signed by Plaintiffs and Class Members were substantively unconscionable. These determinations make Plaintiffs' case strong, but Defendants planned to challenge each of these rulings on appeal. Further, the Court denied Plaintiffs' motion for summary judgment on damages and the Motor Carrier Act ("MCA") exemption, holding those issues presented factual issues for the jury. Both issues—the calculation of damages and the MCA exemption—posed risks at trial, which were further compounded by Defendants' repeated assertions of financial instability and threats of bankruptcy. For instance, Defendants' expert submitted reports with opinions that IntelliQuick's Drivers worked fewer hours than those calculated by Plaintiffs' expert and that Plaintiffs' expert used incorrect data points from Defendants' delivery records to estimate hours worked. Defendants also submitted evidence that some Drivers may have used vehicles meeting the weight requirements for application of the MCA exemption. Other anecdotal evidence produced by Defendants (which Plaintiffs moved to strike) might have been permitted to be used by Defendants at trial to claim some Drivers were not working during periods that Plaintiffs' expert included as working time.

   2.  The Risk, Expense, Complexity, and Duration of Further Litigation

  The substantial likelihood, expense, complexity, and duration of further litigation including not only the risk and delay of trial and likely appeals but also the prospect of a complex and lengthy bankruptcy reorganization, posed serious risks that Named Plaintiffs and the Class Members would recover much less than they are recovering via this settlement. These risks should weigh heavily in determining that the Settlement Agreement is fair and adequate. Not only did Defendants' claimed precarious financial condition pose substantial risks, the likely substantial additional costs of trial and appeals would further compound the risks of recovery by reducing Defendants' ability to satisfy any judgment

and increasing the likelihood that Defendants would follow through on their repeated threats to file for bankruptcy. The filing of a bankruptcy would substantially delay resolution of Plaintiffs' claims, increase the complexity of remaining litigation, require substantial additional expense (for both parties) with the necessary hiring of bankruptcy counsel, but would not alleviate the need for trial on the remaining factual issues, and would ultimately threaten Plaintiffs' recovery altogether as their claims are unsecured. Plaintiffs requested and obtained as much financial information from Defendants as they were willing to provide and hired outside legal consultants to assist in risk assessment and consideration of the current settlement terms. The Settlement Agreement not only provides for a substantial up-front payment, it also provides additional security in case Defendants do not abide by their obligation to pay remaining amounts over longer periods, all of which will streamline recovery efforts and reduce litigation costs should Defendants fail to meet their obligations. The Agreement also eliminates the risks and delay of trial and possible reversal of the Court's rulings on appeal. Class Counsel believe the Agreement constitutes a fair settlement in light of the risks of litigation risks and further delay in payment.

### 3.    The Settlement Eliminates Any Risk of Decertification

While Plaintiffs believe the risk of decertification is low, Plaintiffs also have taken into account the prospect of a motion to decertify or partially decertify the Rule 23 class at any time before final judgment, even after a jury verdict. Fed. R. Civ. P. 23(c)(1)(C). The Settlement Agreement eliminates the risk of decertification (even if low)[4] and thus weighs in favor of approval of the settlement. *See In re Toys  RUs-Delaware, Inc.—Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 452-53 (C.D. Cal. 2014) ("Avoiding the risk of decertification … favors approval of [a] settlement); *McKenzie v. Federal Exp. Corp.*, No. 10-02420, 2012 WL 2930201, *4 (C.D. Cal. July 2, 2012).

---

[4] Defendants' MCA exemption defense remained for resolution at trial and posed potential additional risks for maintaining class status.

4.      The Amount Offered in the Settlement is an Excellent Result for
Class Members, Which Favors Settlement

The Ninth Circuit has previously noted that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. [A] proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what *might* have been achieved[.]" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "Estimates of a fair settlement figure are [to be] tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc.*, 295 F.R.D. at 453.

Here, Plaintiffs' expert calculated the Gross Settlement Damages which, combined for the FLSA Opt-In Class Members and the Rule 23 Class Members, is slightly higher than $6 million. Plaintiffs negotiated the Settlement Agreement to ensure recovery by the Class was fair, reasonable, and adequate. Excluding any amounts attributable to the Individual Damages Claim Payments, the Settlement Agreement provides for over $4.9 million to be allocated to the Class Members, which represents approximately 82 % of Class Members' Gross Settlement Damages, an extremely high percentage. After accounting for the Class Members allocable share of the requested Service Awards, attorneys' fees, costs, and administrative expenses, the net amount payable to the Class Members is approximately 48.6 % of their estimated Gross Settlement Damages. Bonnett Decl. at ¶¶ 31-32.

These percentage amounts are excellent and on the high end of recoveries in similar matters. *See, e.g. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of one-sixth of the potential recovery to be fair under the circumstances); *Greko v. Diesel U.S.A., Inc.*, No. 10–cv–02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (24 percent); *Glass v. UBS Fin. Serv., Inc.*, No. 06-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (25 to 35 percent); *Rosales v. El Rancho Farms*, No. 1:12-CV-01934-AWI, 2015 WL 4460918, at *14 (E.D. Cal. July 21, 2015)

(25% of the maximum potential recovery); *In re Celera Corp. Sec. Litig.,* No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *6 (N.D. Cal. Mar. 31, 2015) (8% of maximum potential recovery). Accordingly, this factor strongly weighs in favor preliminary approval.

5.   The Extent of Discovery Completed, and the Stage of the Proceedings Supports Approval of the Settlement

The Parties reached settlement after summary judgment on the Class Claims and about one month before the commencement of trial after extensive mediation efforts and while the Parties also prepared and filed pre-trial motions and evidentiary disclosures. As such, discovery was completed, and litigation was in a very advanced stage. During the course of the litigation, the Parties exchanged hundreds of thousands of pages of documents and dozens of gigabytes of data and took 29 depositions, including multiple 30(b)(6) depositions of Defendants, the depositions of all seven Named Plaintiffs, and multiple depositions of Plaintiffs' expert. The Parties each submitted multiple expert reports involving detailed analysis of considerable amounts of data Plaintiffs' expert used to calculate damages. The Parties also engaged in extensive motion practice, including multiple discovery motions that resulted in orders sanctioning Defendants and striking improper expert reports filed by Defendants. The advanced stage of the case and the extensive discovery efforts support approval of the Agreement. *See In re Toys R Us-Delaware, Inc.*, 295 F.R.D. at 454 ("The more the discovery completed, the more likely it is that the Parties have a clear view of the strengths and weaknesses of their cases.") (internal citation and quotation omitted).

6.   The Settlement Was Negotiated by Highly Experienced Counsel Who View the Settlement as Fair, Reasonable, and Adequate

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal quotation marks and citation omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Corson v.*

*Toyota Motor Sales U.S.A., Inc.*, No. 128499, 2016 WL 1375838, at \*7 (C.D. Cal. Apr. 4, 2016) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). Moreover, settlements are afforded a presumption of fairness if the negotiations occurred at arm's length. *Corson*, 2016 WL 1375838 at \*7 (*citing* 4 Newberg on Class Actions § 11.41 (4th ed. 2013)).

Class Counsel has extensive experience and expertise in prosecuting misclassification, wage-and-hour collective- and class-action litigation cases on behalf plaintiffs and has the necessary skill and experience to negotiate a fair settlement for the Settlement Class. Bonnet Decl. ¶¶ 71-80. Class Counsel vigorously and successfully prosecuted this case for nearly seven years and carefully analyzed the legal issues and evidence, the risks to the Settlement Class in continuing the litigation, the total potential damages and the benefits and detriments of the settlement reached with Defendants. Based on an exhaustive review of the relevant factors in this case, Class Counsel zealously negotiated the Agreement and is satisfied that the settlement is fair, reasonable, adequate, and in the best interests of the Named Plaintiffs and the Settlement Class. Class Counsel's opinion deserves great weight both because of their familiarity with the litigation and because of their extensive experience in similar actions.

7.     The Reaction of the Class Members to the Proposed Settlement

Although a fuller analysis of this factor is appropriate after notice, given the unanimous support of the seven Named Plaintiffs this factor weighs in favor of preliminary approval.

**B.     The Proposed Forms and Method of Notice Are Fair and Accurate**

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. 10-3873, 2011 WL 320998, at \*10 (C.D. Cal. Jan. 27, 2011). However, actual notice is not required. *Id.* (citing *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)). Plaintiffs must provide notice to class members that is

1   "timely, accurate, and informative." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165,
2   172 (1989). Likewise, claim forms must be informative and accurate. *Id.* at 172; *Churchill*
3   *Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). Notice to the class
4   must be "reasonably calculated, under all the circumstances, to apprise interested Parties
5   of the pendency of the action and afford them an opportunity to present their objections."
6   *Mullane v. Cent. Hanover Bank*, 339 U.S. 306, 314 (1950). The notice should generally
7   describe the terms of the settlement "in sufficient detail to alert those with adverse
8   viewpoints to investigate and to come forward and be heard." *Torrisi*, 8 F.3d at 1374
9   (citing *In re Cement and Concrete Antitrust Lit.*, 817 F.2d 1435, 1440 (9th Cir. 1987)).

10   "[N]otice under the FLSA must inform potential class members of the opt-in
11   procedures and of the binding effect, on those who opt-in, of the judgment or settlement."
12   *Clesceri*, 2011 WL 320998, at *11 (citing 29 U.S.C. § 216(b)). Here, the Agreement
13   provides that all members of the FLSA opt-in class are deemed to have submitted claim
14   forms by having submitted consent to sue forms. The FLSA opt-in Class Members will
15   still receive notice and the opportunity to object or opt-out.

16   The proposed Class Notice (Exhibit C to the Agreement), Claim Form (Exhibit B
17   to the Agreement), and method of notice have been agreed upon by the Parties and are
18   accurate and informative and designed to provide the best notice that is practicable under
19   the circumstances. The Parties have agreed that the settlement will be administered by a
20   third-party Settlement Administrator[5] and that Class Notice will be sent by first-class
21   mail and, if available, email and text message to all known email addresses and phone
22   numbers of Class Members. In addition, the Settlement Administrator will post the Class
23   Notice on a website maintained by the Settlement Administrator. Before mailing, the
24   Administrator will perform a National Change of Address (NCOA) search. If Class

---

25   [5] The parties are finalizing the selection and engagement of the Settlement Administrator
26   and will advise the Court by written stipulation prior to the Preliminary Approval
      Hearing so the relevant information can be included in the Class Notice, Claim Form,
27   and Change of Information Form.

28

Notices are returned for insufficient address, the Settlement Administrator will conduct a skip trace and/or such other reasonable steps to ensure notice is provided to the Class Members.

The Class Notice informs Drivers of the pendency and description of the settlement, affords them an opportunity to present their views with respect to the settlement, including opting-out or objecting, informs each of the Drivers how much they will receive, and what claims they are releasing. The Class Notice describes the fee arrangement, the proposed Service Awards, and individual damages amounts. It also describes the rights and straightforward steps needed either to participate or not participate in the case.  The proposed Notice, claim, and opt-out steps and proposed methods of providing notice are fair, comprehensive and comport with due process.

## C.   The Service Awards to Named Plaintiffs Are Reasonable

Courts, including the Ninth Circuit, have held that it is appropriate for named plaintiffs in class actions to receive service awards as compensation for the work they perform and the sometimes serious risks they bear, which benefit the class. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases."). Given the Named Plaintiffs' substantial contributions to the class, the requested Service Awards of **$2,500** (Black, Priestly, and Arras), **$10,000** (Kingman and Morena), and **$20,000** (Collinge and Campagna) are well within amounts approved by courts in the Ninth Circuit. *See Ross v. U.S. Bank Nat'l Ass'n,* No. 3:07-2951, 2010 WL 3833922, at *3 (N.D. Cal. Sept. 29, 2010) ($20,000 to each of four named plaintiffs where settlement was $3.5 million); S*inger v. Becton Dickinson & Co*., No. 08-821, 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) ($25,000 case contribution award more than eight years ago in wage and hour case, noting "[t]he $25,000 incentive award is also well within the acceptable range awarded in similar cases.").

As will be supported through detailed declarations following preliminary approval, the Named Plaintiffs each provided substantial time and effort to help their

colleagues despite the risks to them. Bonnett Decl. ¶¶ 64-67. They put themselves forward on a publicly-filed case against their employer, knowing that suing IntelliQuick might have negative effects on their employment. Indeed, the complaint was amended to add claims that Plaintiffs Collinge and Campagna were retaliated against and terminated because of their involvement in this case and subsequently Plaintiffs Kingman and Morena were also terminated. Given the Named Plaintiffs' personal risks undertaken coupled with their active and prolonged involvement in the case and the extensive assistance they provided, the requested Service Awards are warranted.

**D.      The Attorneys' Fees, Costs, and Expenses are Reasonable and Likely to Be Approved by the Court**

The Settlement Agreement provides that Named Plaintiffs and Class Counsel may apply to the Court for an award of attorneys' fees, plus costs and expenses. "The Ninth Circuit has approved two methods of assigning attorney's fees in common fund cases: the 'percentage of the fund' method and the 'lodestar' method. *Ontiveros v. Zamora*, 303 F.R.D. 356, 372 (E.D. Cal. 2014) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)). Class Counsel will file a motion with complete supporting documentation for costs and for attorneys' fees of $1,833,333.33 (1/3 of the settlement) which is less than Class Counsel's reasonably calculated lodestar. Bonnett Decl. ¶¶ 83-84. Class Counsel has vigorously litigated this case for almost seven years and believes the Court will be likely approve the fee request given the length and complexity of the case, the results achieved for Class Members, the time expended by Class Counsel, and the lodestar crosscheck. The Court's ultimate determination of the Service Awards and Class Counsel's fee request will not affect the terms of the Settlement.

**IV.      PROPOSED SCHEDULE FOR FAIRNESS HEARING AND RELATED LITIGATION DEADLINES**

Should the Court grant Plaintiffs' motion on February 8, 2019, Plaintiffs respectfully request that the Court enter the following schedule for the Final Fairness Hearing and other litigation-related deadlines:

a)  Approval of the proposed form of Class Notice, Claim Form, and Change of

Information attached to the Settlement Agreement to be sent to Class Members by February 22, 2019. The Notice Period shall end April 23, 2019.

b) Class Counsel shall file motion(s) for approval of attorneys' fees, costs, expenses, Service Awards and Named Plaintiffs' Individual Damages Claim Payments and any supporting documentation by April 2, 2019;

c) Class Counsel shall file a Motion for Final Approval of the Settlement Agreement by **April 30, 2019**;

d) Any Class Member who wishes to opt out of the Settlement pursuant to Fed. R. Civ. P. 23(b)(3) may do so provided he or she submits to the Settlement Administrator, a written request setting forth the following: (1) the Class Member's name; (2) the Class Member's mailing address and phone number; and (3) the statement "I want to be excluded from the Intelliquick Settlement"  by **April 23, 2019**;

e) Any Class Member who does not opt out of the lawsuit and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement Agreement, their Individual Settlement Payment, the Service Award or the Individual Damages Claim Payments, or the request by Class Counsel for an award of attorneys' fees and costs, must serve on the Settlement Administrator as designated in the Class Notice, no later than **April 23, 2019**, a statement of the objection, as well as the specific reason(s), if any, for each objection, including any legal support that the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of the objection. Any Class Member who files and serves a written objection, as described herein, may appear at the Final Fairness Hearing and request to be heard with respect to the objection timely filed in accordance with this Paragraph;

f) The Parties may file written replies to objections submitted and other papers in support of the Settlement by **April 30, 3019**;

g)  A Final Fairness Hearing and hearing on Class Counsel's Motion for Fees and

Costs shall be conducted on **May 7, 2019**, as the Court's calendar permits.

## V.     CONCLUSION

For the foregoing reasons and those set forth in the Bonnett Declaration, Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Preliminary Settlement Approval, approve distribution of the Class Notice, and set a date and time for a final approval fairness hearing.

DATED this 29th day of January 2019.

MARTIN & BONNETT, P.L.L.C.

By: /s/   Daniel L. Bonnett
     Susan Martin
     Daniel L. Bonnett
     Jennifer Kroll
     Michael Licata
     4647 N. 32nd Street, Suite 185
     Phoenix, Arizona 85018
     Telephone: (602) 240-6900

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM-ECF System for filing and transmittal of a Notice of Electronic filing to the following CM-ECF registrants:

Mark Ogden, Esq.
Cory Glen Walker, Esq.
Christopher Miller Suffecool, Esq.
Littler Mendelson, P.C.
2425 East Camelback Road, Suite 900
Phoenix, AZ 85016

Rick D. Roskelley, Esq.
Littler Mendelson, P.C.
3960 Howard Hughes Parkway, Suite 300
Las Vegas, NV  89169-5937

*Attorneys for Defendants IntelliQuick Delivery Inc., Keith Spizzirri, Miriam Spizzirri, Majik Leasing, LLC, Felicia Tavison, Jason Mittendorf, Jane Doe Mittendorf, Jeffrey Lieber, William "Bill" Cocchia, Jane Doe Cocchia, Steven Anastase, Jane Doe Anastase, and Majik Enterprises I, Inc.*

s/Kathy Pasley