Susan Martin (AZ#014226)
Daniel Bonnett (AZ#014127)
Jennifer Kroll (AZ#019859)
Michael Licata (AZ#033941)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
Facsimile: (602) 240-6900
smartin@martinbonnett.com
dbonnett@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| David Collinge, Melonie Priestly, Heather Arras, Robert Campagna, John Morena, Brian Black, and Brian Kingman on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> IntelliQuick Delivery, Inc., an Arizona corporation; *Keith Spizzirri and Miriam Spizzirri, husband and wife; Transportation Authority, LLC, a Nevada corporation; Robert F. Lorgeree, Jr; Majik Leasing, LLC, an Arizona corporation, Felica Tavison; Jason Mittendorf and Jane Doe Mittendorf; Jeffrey Lieber; William "Bill" Cocchia and Jane Doe Cocchia; Steven Anastase and Jane Doe Anastase; Majik Enterprises I, Inc., an Arizona corporation,* <br><br> Defendants. <br> _____ | CASE NO. CV12-00824-JWS <br><br> PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT |

## I. Introduction

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Order of this Court dated February 8, 2019 (Doc. 574) preliminarily approving the Class Action Settlement Agreement, and in accordance with the provisions of the Settlement Agreement (Doc. 570-1), Named Plaintiffs, on behalf of themselves and the Settlement Class Members,[1] hereby respectfully request that the Court grant Final Approval of the Settlement Agreement to resolve the claims in this case. This motion is supported by the May 3, 2019 Declaration of Daniel Bonnett in Support of Motion for Final Approval of Class Action Settlement ("Bonnett Decl.") with attached exhibits, the May 3, 2019 Declaration of Jarrod Salinas of Simpluris, Inc. (the Settlement Administrator) ("Salinas Decl.") and the record before the Court.

The facts, claims asserted by Plaintiffs, and procedural history of the case are set forth in Plaintiffs' Motion for Preliminary Approval (Doc. 570 at 2-12). On February 8, 2019, the Court preliminarily approved the Class Action Settlement, modified the certified Settlement Class under Fed. R. Civ. P. 23(b)(3), approved Simpluris, Inc. as the Settlement Administrator, approved the form and content of the Class Notice, and approved the methods for contacting and locating Class Members and distributing the Class Notice. Doc. 574 at 2-3. Pursuant to the Court's orders (Doc. 574 at 3; Doc. 578), Plaintiffs and Class Counsel filed their motion for approval of attorneys' fees, costs, expenses, Service Awards, and the Named Plaintiffs' Individual Damages Claim Payments on April 9, 2019 (Doc. 593).

The Court granted preliminary approval to the settlement on February 8, 2019 finding that the Settlement appears to be fair, adequate, and reasonable. (Doc. 574). Nothing has occurred since preliminary approval to undermine that finding. Quite the contrary, after distribution of the Class Notice, over 450 Claim Forms have been received by the Settlement Administrator (including FLSA and Rule 23 Class Members) totaling

---

[1] Capitalized terms have the meanings set forth in the Settlement Agreement (Doc. 570-1).

1

1  $2,548,078 or 84.9% of the aggregate total of all funds that could have been distributed to the Class Members if there had been a 100% opt-in participation rate by all Rule 23 Class Members. Bonnett Decl. at ¶ 11 and Exhibit 2 thereto.  If the Court approves the amounts requested for attorneys' fees, costs, expenses, Service Awards, and Individual Damages Claim Payments, the Final Settlement Amount will be over $5,048,000, or 91.78% of the negotiated $5,500,000 Gross Settlement Amount available for distribution. The deadline to file objections or opt out of the settlement was April 26, 2019.  No Settlement Class Member has opted out or objected to the Settlement Agreement. Salinas Decl. at ¶ 10; Bonnett Decl. at ¶ 27.

## II.   Terms of the Settlement

A detailed summary of the Settlement Agreement is set forth in Plaintiffs' Motion for Preliminary Approval (Doc. 570 at 6-12). As the Court will recall, the Settlement Agreement provides for a Gross Settlement Amount of $5.5 million, $2.5 million of which is not subject to reversion. The Settlement Agreement also provides that the total for Named Plaintiffs' Individual Damages Claims, Service Awards, Costs and Attorneys' Fees shall not exceed $2.5 million. While the Agreement provides that $3 million of the Gross Settlement Amount is payable on a claims-made basis subject to reversion, all Settlement Class Members who have already opted-in (the "FLSA Class Members") were deemed to have submitted Claim Forms and need not do anything further to receive their Individual Settlement Amounts.  Rule 23 Class Members were required to submit a Claim Form to receive his or her Individual Settlement Amount determined by the allocation formula preliminarily approved by the Court. In the event a Rule 23 Class Member who is not also a FLSA Class Member does not submit a claim form to participate in the Settlement, the amount allocated for that Class Member's Individual Settlement Amount will revert to Defendants. As noted above, $2,548,078 of the Individual Settlement Amounts were claimed and the Defendants are set to receive a reversion of only $451,922 or 8.2% of the Gross Settlement Amount ($451,922 ÷ $5,500,000).  Bonnett Decl. ¶ 11. There are still a few potential Class Members about whom Class Counsel, Defense

2

1  Counsel and the Settlement Administrator are still conferring. Salinas Decl. ¶11(d);
2  Bonnett Decl. ¶ 26. The parties will advise the Court at the Final Fairness Hearing of any
3  unresolved issues that may require further involvement by the Court, however, it is Class
4  Counsel's position that the numbers and percentages set forth herein, if adjusted at all,
5  would only add a few additional individuals to the Settlement Class along with their
6  corresponding Individual Settlement Amounts, if any. This would not reduce any
7  Settlement Class Member's Individual Settlement Amount.

8  **Class Member's Individual Settlement Amounts**

9  Each Class Member's settlement amount is calculated based on whether they are
10  an FLSA Opt-In Class member, a Rule 23 Class Member, or both. The settlement amount
11  for all FLSA Opt-In Class Members is based on the total unpaid wages due (i.e., overtime
12  premiums due, minimum wages due, and overtime premiums on minimum wage due)
13  times two (to account for liquidated damages available under the FLSA) for the time
14  period beginning three years prior to the filing of the individual's opt-in form through
15  July 7, 2018. The settlement amount for Rule 23 Class Members is the total unpaid wages
16  due plus interest on such wages due for the time period from April 9, 2011 (one year prior
17  to the commencement of the Lawsuit consistent with the applicable statute of limitations)
18  through July 7, 2018.

19  For those who are both FLSA and Rule 23 Class Members, the Individual
20  Settlement Amount is the greater of the damages as an FLSA Opt-In Class Member or as
21  a Rule 23 Class Member, but not both. A list of each Settlement Class Member's final
22  Individual Settlement Amount is attached as Exhibit 1 to the Bonnett Declaration. Each
23  Class Member's estimated Individual Settlement Amount (based on the assumption of
24  the Court granting the requests for attorneys' fees, costs, Service Awards, and
25  Individual Damages Claims Payments) was included in their individualized Class Notice
26  distributed by the Settlement Administrator to each Class Member. Bonnett Decl. at ¶
27  15(b). As noted, the total amounts to be recovered by the Rule 23 Class Members and the
28  FLSA Class Members for their unpaid wage claims is $2,548,078 or 84.9% of the Net

Settlement Fund. Bonnett Decl. at ¶ 20 and Exhibit 2 thereto. If Attorneys' Fees, Costs, Expenses, Service Awards and Individual Damages Claims are awarded in the amounts requested, adding these amounts to the aggregate amount of wage claims represented by the Claim Forms, total payout by Defendants to the Class, Named Plaintiffs and Class Counsel is 91.78% of the negotiated Gross Settlement Amount.  Bonnett Decl. ¶ 14.

**Service Awards and Named Plaintiffs' Individual Damages Claim Payments**

As detailed in Plaintiffs' Motion for Preliminary Approval (Doc. 570 at 9-10), Plaintiffs' and Class Counsel's Motion for Award of Attorneys' Fees, Costs, Expenses, Service Awards, and Named Plaintiffs' Individual Damages Claim Payments, and supporting declarations (Doc. 580 at 11-13), Class Counsel is requesting Service Awards to the seven Named Plaintiffs totaling $67,500.

The Named Plaintiffs' Individual Damage Claims are also finally resolved and released under the terms of the Settlement Agreement. As explained in the Plaintiffs' April 9, 2019 Motion (Doc. 580 at 11-15), the resolution of the Individual Damage Claims is the result of a proposed allocation of a portion of the Gross Settlement Amount to compensate the Named Plaintiffs for their non-wage overtime and minimum individual damages that are not part of their FLSA Class damage claims. Six of the seven Named Plaintiffs have measurable individual damages that were calculated as explained in detail in Plaintiffs' Motion for Award of Attorneys' Fees, Costs, Expenses, Service Awards, and Named Plaintiffs' Individual Damages Claim Payments. Doc. 580 at 13-20. For purposes of allocation, Class Counsel (working with each Named Plaintiff) valued each Individual Damages Claim for settlement purposes. *Id*. The fair settlement gross value of these claims was determined to be $557,000.00. Once the fair settlement gross value was determined for each Individual Damages Claim, each was reduced by the same percentage as applied to the entire Class to account for the amount of the requested attorneys' fees, costs, expenses and total service awards to arrive at a net amount of the Individual Damages  Claim Payment, which produces a net total of $277,299.76 or 49.78% of the gross value (the same percentage applied to the Class). *See* Doc. 580 at 14-15. The

requested Individual Damages Claim Payment(s) will be made on the same basis as payment of the Class Members' Individual Settlement Amounts (i.e. on the installment basis outlined in the Settlement Agreement). *See* Exhibit 2 to Bonnett Decl.

**Remedies in the Event of Defendants' Failure to Pay the Final Settlement Amount**

In addition, as set forth in Plaintiffs' Motion for Preliminary Approval (Doc. 570 at 11-12), the Settlement Agreement includes provisions designed to provide Named Plaintiffs and Class Members added security in the event Defendants do not comply with their obligations under the Settlement Agreement. These include: (1) a Stipulation of Entry of Judgment for $8,600,000 (less any payments Defendants make under terms of the Settlement); (2) and Warranty and Waiver of Community Property; and (3) Lien Instruments. The Stipulation of Entry of Judgment forms have been executed and provided to Class Counsel in accordance with the Settlement Agreement. Bonnett Decl. at ¶ 25. The Lien Instruments along with the Warranty and Waiver of Community Property forms are being finalized and will be executed before the Effective Date of the Settlement Agreement. *Id*.

**Distribution of the Settlement Funds**

Under the terms of the Settlement Agreement, Defendants must transfer to the Settlement Administrator an Initial Payment of $2.5 million within 30 days of Final Approval (the "Effective Date") from which requested costs, expenses and Service Awards are to be paid in full. After payment of these costs, expenses, and Service Awards, the balance of the Initial Payment will be divided and distributed proportionally by the Settlement Administrator to the Settlement Class Members for their Individual Settlement Amounts, Named Plaintiffs for their Individual Damages Claim Payments, and to Class Counsel for attorneys' fees according to the agreed allocation formula. *See* Exhibit 2 to Bonnett Decl. The Settlement Agreement provides that not later than one year after the Initial Payment is due and for successive years not to exceed four, the Remaining Settlement Amount must be paid by Defendants in equal installments, not to exceed four annual installments, with each annual installment to be not less than

5

1  $500,000 unless the total Remaining Settlement Amount balance owed and due at the
2  next installment due date is less than $500,000, in which case it must be paid in full. Each
3  installment payment is due no later than the date that is 12 months after the Initial Payment
4  (and the immediately preceding payment thereafter) until the Remaining Settlement
5  Amount is paid in full. Based on the total of all amounts to be paid by Defendants under
6  the terms of the Settlement Agreement, including the Initial Payment of $2.5 million, the
7  final payment should be made and all terms of the Settlement Agreement fully performed
8  no later than June 19, 2023. Bonnett Decl. at ¶ 24.

### III. Distribution of the Class Notice and Submission of Claim Forms

Pursuant to the Court's Order granting preliminary approval and the terms of the Settlement Agreement, the Settlement Administrator mailed the Class Notices to 1,243 Class Members by regular U.S. Mail on February 22, 2019.  See Salinas Decl. at ¶¶ 4-5. Prior to mailing the Class Notice, the Settlement Administrator performed a National Change of Address (NCOA) search in accordance with Section III.B. of the Settlement Agreement. *Id*. at ¶ 3.  The Settlement Administrator also distributed the Class Notice via e-mail to those 613 Class Members for whom the parties had e-mail addresses. In addition, for 452 Class Members for whom the parties had cell phone numbers, the Settlement Administrator sent text messages with language agreed upon by the parties informing the Class Members that a Settlement of the lawsuit was reached and directing them to a dedicated website for more information. *Id*. at ¶ 5. The Settlement Administrator also posted the Class Notice on a dedicated website regarding the Settlement as described in Section III.E. of the Settlement Agreement. *Id*. Class Counsel also communicated with multiple Class Members via email and telephone to ensure receipt of the Class Notice, to assist with preparation and submission of Claim Forms and Change of Information Forms, and to answer questions from Class Members about the Settlement. Bonnett Decl. at ¶ 27.

Following distribution of the Class Notices, the Settlement Administrator received a total of 273 returned mailings as undeliverable and/or with no forwarding address. In accordance with Section III.B. of the Settlement Agreement, the Settlement

Administrator conducted a skip trace for each of the Class Members whose mailed Class Notice was returned. Salinas Decl. at ¶ 6. Within five business days from the receipt of returned mail, and following conducting related skip tracing, the Settlement Administrator sent a second mailing by regular U.S. Mail to the Class Members whose previously mailed notices had been returned and for whom updated address and contact information had been obtained. *Id*. at ¶ 8. Only 17 of the second mailing of the Class Notice had been returned to the Settlement Administrator as undeliverable and/or with no forwarding address. Salinas Decl. at ¶ 9.[2]

In addition to this process of providing robust notice to Class Members, 24 Claim Forms were submitted by self-identifying individuals claiming to be members of the Class. The names and copies of these Claim Forms were provided to Class Counsel and Defense Counsel for verification and follow up. Salinas Decl. ¶ 11(e); Bonnett Decl. ¶ 26. Of the 24 individuals who submitted Claim Forms, and after consultation with Defense Counsel, four were determined by the parties to be properly includable within the Settlement Class. The Individual Settlement Amounts for each of these additional

---

[2] Only 12 of the 17 undeliverable notices were for Class Members who had an actual Individual Settlement Amount greater than $-0-. The Settlement Administrator worked diligently with Class Counsel to attempt to locate these 17 Class Members by telephone, email and/or text messaging and have exhausted all reasonable means available to attempt to reach these Class Members in accordance with the protocols set forth in the Settlement Agreement. Salinas Decl. at ¶ 10. The 17 undeliverable notices represent only 1.3% of the distributed Class Notices and is a low rate considering the length of the class period, the transient nature of regional delivery driver services, and the brief employment dates for many of the Settlement Class Members. S*ee, e.g., Godson v. Eltman, Eltman, & Cooper, P.C*., 328 F.R.D. 35, 52 (W.D.N.Y. 2018) (adequate notice provided where 23 of 270 or 8.5% of notices were undeliverable). The skip traces employed by the Settlement Administrator have been widely accepted as a "reasonable search" that "satisfies due process." *In re MyFord Touch Consumer Litig*., 13-CV-03072-EMC, 2019 WL 1411510, at *11 (N.D. Cal. Mar. 28, 2019); *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 254 (N.D. Cal. 2015) (approving system of mailing settlement notices to last-known addresses and using skip traces to re-send undeliverable mail as "reasonably calculated to provide notice to class members"); *Gundersen v. Lennar Associate*s Mgmt., LLC, C09-02270 CRB, 2011 WL 13250650, at *3 (N.D. Cal. July 11, 2011) (same).

self-identifying Class Members was determined using the same method for determine the settlement amounts for the all Class Members and then amounts were similarly reduced to account for the Class Members' proportionate share of the requested Service Awards, attorneys' fees, costs, and administrative expenses. Bonnett Decl. at ¶ 26. The remaining self-identifying class members were determined to not be part of the Settlement Class, either because they worked outside of the limitations period, were classified and paid by Defendants as W-2 employees, worked outside of Arizona, or the determination remains pending. *Id*.

Valid claim forms have been received for 361 Rule 23 Class Members. Salinas Decl. at ¶ 11(b). Along with the 96 FLSA Class Members, 457 total claims have been submitted. Bonnett Decl. at ¶16; Salinas Decl. ¶13. This represents 36% of the Settlement Class Members and 40% of the Settlement Class Members who have been determined to have at least some verifiable Individual Settlement Amount. Bonnett Decl. ¶18. The Individual Settlement Amounts to be paid to Settlement Class Members for their unpaid minimum and overtime wage claims totals $2,548,078 (not counting the Named Plaintiff's Individual Damages Claim Payments). This represents 84.9% of the total possible calculated recoverable damages that could be distributed to Class Members from the Net Settlement Fund under the terms of the Settlement Agreement. Bonnett Decl. ¶11. If the requested amounts for attorneys' fees and costs, administrative costs, Service Awards, and Individual Damages Claim Payments are approved by the Court, the Final Settlement Amount totals $5,048,078 or 91.78% of the Gross Settlement Amount. Bonnett Decl. ¶ 14.

**IV.     The Settlement Agreement is Fair, Reasonable, and Adequate.**

"Because '[t]he Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval [,]' … district courts in this Circuit typically apply the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982)." *Garcia v. Cty. of Los Angeles*, No.153549, 2018 WL 3218212, at *2 (C.D. Cal.

8

May 21, 2018) (quoting *Otey v. CrowdFlower, Inc.*, 2015 WL 6091741, *4 (N.D. Cal. 2015)). *See Villarreal v. Caremark LLC*, No. CV-14-00652-PHX-DJH, 2016 WL 5938705, at *2 (D. Ariz. May 10, 2016) ("Like 'numerous district courts throughout the Ninth Circuit,' this Court, too, is guided by *Lynn's Foods* in deciding whether to approve the parties' Stipulation.") (citing cases). "In 'scrutinizing' a FLSA settlement 'for fairness [,]' a court must decide whether a stipulated settlement agreement 'is a fair and reasonable resolution of a bond fide dispute of FLSA provisions.'" *Villarreal*, 2016 WL 5938705, at *2 (quoting *Lynn's Foods*, 679 F.2d at 1353). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues ... that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.

Because of the inherent differences between class actions and individual FLSA settlements, some of the Rule 23 "fairness" factors do not apply to FLSA collective action settlements. *Villalobos*, 2016 WL 6901695 at *4. "However, '[s]everal courts have regularly applied the Rule 23... factors when evaluating the fairness and reasonableness of an FLSA settlement.'" *Villalobos*, 2016 WL 6901695 at *4, *quoting Lewis*, 2012 WL 2930867, at *2. "These factors include (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the Class Members to the proposed settlement." *Id.* (citing *Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). As this case involves both FLSA and Rule 23 classes, application of these factors is appropriate. As set forth below, all the relevant factors favor final approval of the settlement of the case.

Plaintiffs have addressed each of these factors in detail in their Motion for Preliminary Approval (Doc. 570 at 13-18), which Plaintiffs incorporate herein. Since the Court's February 8, 2019 order preliminarily approving the Settlement, however,

1 additional facts support factors (2) (the amount offered in Settlement) and (8) (the reaction
2 of Class Members). Bonnett Decl. ¶¶ 5 – 30.
3       As to the amount offered in settlement, the Court may now more accurately
4 determine the value of the settlement. *See Harris v. Vector Marketing Corp.*, No. C–08–
5 5198 EMC, 2011 WL 1627973 at *13-14 (N.D. Cal. April 29, 2011) (recognizing that the
6 actual value of the settlement can be more accurately assessed at a final fairness hearing
7 after submission of claims). As set forth above, Defendants are set to pay out $5,048,078
8 or nearly 92% of the negotiated $5,500,000 Gross Settlement Amount, with only
9 $451,922 or 8.2% reverting to Defendants. Bonnett Decl. at ¶ 11. This is an excellent
10 result for Class Members, and the reversion to Defendants is far less than amounts
11 routinely approved by courts on final approval of class action settlements. *See Nur v.*
12 *Tatitlek Support Services, Inc.*, 15CV00094SVWJPRX, 2016 WL 7626144, at *3 (C.D.
13 Cal. Aug. 23, 2016) (FLSA case where 40% of settlement amount reverted to the
14 defendant); *Wallace v. Countrywide Home Loans, Inc.*, SACV081463JLSMLGX, 2015
15 WL 13284517, at *6 (C.D. Cal. Apr. 17, 2015) (granting final approval where "76% of
16 the funds originally set aside for payment to Class Members will revert back to
17 Defendants"); *Navarro v. Servisair*, C 08-02716 MHP, 2010 WL 1729538, at *5 (N.D.
18 Cal. Apr. 27, 2010) (wage and hour case granting final approval where the defendant
19 retained "at least" 18% of settlement fund). Accordingly, the extremely high percentage
20 of the Gross Settlement Amount that will ultimately be paid by Defendants supports
21 finding the Settlement Agreement to be fair, reasonable, and adequate.
22       Plaintiffs also note (and as previously explained in the Motion for Preliminary
23 Approval (Doc. 570 at 6)) each Settlement Class Member who has submitted a valid
24 Claim Form is set to receive 83.5% of their estimated damages on a gross basis and
25 approximately 49.78% on a net basis (after accounting for requested attorneys' fees, costs
26 and Service Awards, as requested) of their calculated damages. Bonnett Decl. ¶ 10. These
27 amounts exceed recoveries under other settlements that have been determined to be fair
28 and reasonable. *See, e.g. Glass v. UBS Fin. Servs., Inc.*, No. 06–cv–4068 MMC, 2007

WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (finding settlement of wage and hour class action for 25% to 35% of the claimed damages to be reasonable); *Greko v. Diesel U.S.A., Inc.*, 10-CV-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (24% of damages).

With respect to the reaction of Class Members to the proposed Settlement following Preliminary Approval and distribution of Class Notice, numerous Class Members have expressed their gratitude and satisfaction with the Settlement to Class Counsel (Bonnett Decl. at ¶ 27 ), and no Class Member has opted out or objected to the Settlement Agreement. *Id.*; Salinas Decl. at ¶ ¶ 11(g) and (h).  This too supports granting final approval. *See Chun–Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848, 852 (N.D.Cal.2010) (noting that zero objections and 16 opt-outs representing 4.86 percent of the class "strongly supports settlement"); *Cruz v. Sky Chefs, Inc.*, C-12-02705 DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."). Similarly, the participation rate of 36% for all Settlement Class Members  (40% for Settlement Class Members with at least some settlement amounts) exceeds other approved FLSA settlements. *See, e.g. Padron v. Golden State Phone & Wireless*, 16-CV-04076-BLF, 2018 WL 2234550, at *5 (N.D. Cal. May 16, 2018) (19.35% participation rate); *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 266 (D. Conn. 2002) (7.8% opt-in rate for FLSA class).

## VI.    Conclusion

For the foregoing reasons, and for the reasons set forth in Plaintiffs' Motion for Preliminary Approval (Doc. 570), Plaintiffs' Motion for Award of Attorneys' Fees, Costs, Expenses, Service Awards, and Named Plaintiffs' Individual Damages Claim Payments (Doc. 580), and the Declarations of Daniel Bonnett and Jarrod Salinas submitted herewith, Plaintiffs respectfully request that the Court enter the proposed Order of Final Approval submitted as Exhibit D (Doc. 570-5) with Plaintiffs' Unopposed Motion for Preliminary Approval and grant the requested relief:

(1) adjudging the Settlement to be fair, reasonable and adequate;

(2) ordering that the Settlement Agreement is granted Final Approval, directing consummation of the terms and provisions of the Settlement Agreement, and requiring the Parties and Settlement Administrator to take the necessary steps to effectuate the terms of the Settlement;

(3) entering final judgment incorporating the terms and conditions of the Settlement Agreement and directing the Parties and Counsel to fully and completely comply with all terms and conditions of the Settlement;

(4) determining pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure that the Class Notice constitutes the best notice practicable under the circumstances, and that due and sufficient notice of the Final Fairness Hearing and the rights of all members of the Class has been provided;

(5) determining that Defendants complied with CAFA and its notice obligations by providing appropriate federal and state officials with information about the Settlement Agreement;

(6) ordering that each member of the Class who has not opted out of the Lawsuit is deemed to have irrevocably and unconditionally released and discharged the Released Parties with respect to all state and federal law claims for damages, penalties and interest which were brought or could have been brought based on the allegations in the Complaint through the date of entry of the Final Approval Order;

(7) ordering that upon the Settlement Effective Date, the Named Plaintiffs shall be deemed to have irrevocably and unconditionally released and discharged the Released Parties with respect to all claims of any kind against the Released Parties as of the date of Final Approval and that the Released Parties shall be deemed to have irrevocably and unconditionally released and discharged the Named Plaintiffs with respect to all claims of any kind against the Plaintiffs as of the date of Final Approval;

(8) dismissing with prejudice the Lawsuit, without additional cost to any of the Parties other than as provided for in the Settlement Agreement;

1    (9) awarding payments to the Named Plaintiffs and Settlement Class Members
2 to be made consistent with the terms of the Settlement Agreement;
3    (10) awarding attorneys' fees and costs for Class Counsel pursuant to the terms
4 of the Settlement Agreement and in the amounts as requested in Plaintiffs' and Class
5 Counsel's Motion for Award of Attorneys' Fees, Costs, Expenses, Service Awards, and
6 Named Plaintiffs' Individual Damages Claim Payments and granting said motion (Doc.
7 580);
8    (11) awarding the Service Awards and Individual Damages Claim Payments
9 to Named Plaintiffs consistent with the terms of the Agreement and as requested in
10 Plaintiffs' and Class Counsel's Motion for Award of Attorneys' Fees, Costs, Expenses,
11 Service Awards, and Named Plaintiffs' Individual Damages Claim Payments and
12 granting said motion (Doc. 580); and
13    (12) ordering the Parties' submission to, and this Court's continuing retention
14 of, exclusive jurisdiction over this matter for the purpose of effectuating and supervising
15 the enforcement, interpretation or implementation of the settlement, and resolving any
16 disputes that may arise hereunder.

Respectfully submitted this 3rd day of May, 2019.

                                            MARTIN & BONNETT, P.L.L.C.

                                            By: /s/   Daniel L. Bonnett
                                                Susan Martin
                                                Daniel L. Bonnett
                                                Jennifer Kroll
                                                Michael Licata
                                                4647 N. 32nd Street, Suite 185
                                                Phoenix, Arizona 85018
                                                Telephone: (602) 240-6900

                                            *Attorneys for Plaintiffs*